Nott, J.,
delivered the opinion of the court:
This is an action brought to recover $6,250 for the rent of, and for certain injuries to, the Union Hotel, in the city of Georgetown.
On the 9th of May, 1861, a verbal contract was made between the claimant and Captain Camp, assistant quartermaster of the *391 United States army, whereby the Union Hotel, in Georgetown, with the furniture therein, was leased to the defendants for the purposes of a military hospital, at a rent of $500 a month. No certain term was named in this verbal lease. In one report Captain Camp says he “hired the building for no specified time in another, that it was “ for such time as it might be required by the government for hospital purposes.”
On the 19th May, 1862, notice was given to the claimant terminating the lease, and the building was vacated by the defendants. The rent for this period, it is tobe noted, has been paid. But on the 24th June following, a military order was issued by Brigadier General Wadsworth, military governor of Washington, directing that the hotel be taken possession of as a hospital. This was done, and for one year it was thus occupied by the defendants. For this second term of occupancy the claimant has been paid $100 a month by the Quartermaster General, and the chief question at issue is whether the former lease continued and bound the defendants.
Two points have been strenuously insisted upon by the counsel of the claimant. The first is an expression in a letter from the assistant quartermaster to the claimant to the effect that “ it was understood that it (the hotel) would be occupied as long as any building for hospital purposes in Georgetown^’ This letter is neither competent evidence nor sufficientlyproven. The official reports and correspondence of public officers made or carried on in the line of their duty, we have always admitted as evidence bearing the moral sanction of an oath. But it is not the business of a public officer to make admissions against the government, nor can any such admissions bind the defendants. This letter formed no part of the contract, but was a sort of certificate given subsequently to the claimant, and having none of the characteristics of an official report relating to the transaction. It is also brought into the printed case merely as an exhibit to the deposition of the claimant given in his own behalf, and is proven in no other way. The deposition being now incompetent under the recent act of Congress, (Act 25 June,-1868,15 Stat. L., p. 75,) the exhibit falls with it.
The second point insisted upon by the claimant is that he was not restored to possession on the 19th May, 1862, but that the defendants were holding over in fact when the order of General Wadsworth was issued. To sustain this another expres *392 sion is relied upon to be found in a letter from the Quartermaster General to the claimant, bearing date August 23,1862. It is that the government “ ordered this house vacated, which was about to be done when a public calamity compelled the military authorities to order its repossession by this department.” This letter is open to every objection stated against the other, and the ambiguous phrase “ which was about to be done when a public calamity compelled the military authorities to order its repossession.,” is completely overthrown by the claimant’s own admission in his reply to the Quartermaster General, wherein he says, “ It required nearly one month to complete the vacation, after wMch I incurred an expíense of about $200 to put the premises in tenantable condition, and had been in the actual enjoyment of them for only three days when I was ordered to give them up to the government.” This is as clear and explicit as a declaration could be, for if the vacating of the premises was “ complete,” and the landlord'in the "actual enjoyment” of them but a single hour, the old tenancy at will was at an end.
It also appears that there was an actual change in the thing leased, or rather that a different and lesser thing was the subject of the second occupancy. This difference was the furniture. It went with the building under the first lease, but Avas not possessed or used by the government in the second term. What was the difference in value is not shown 5 but that there was an essential difference is undeniable. Therefore, there was equitably as well as legally a new holding on the part of the government, essentially differing from the first.
But the evidence shows that the rent of $100 a month paid by the quartermasters’ department for this second term was not the true value of the property. The testimony of Mr. Edward Clark, the government architect of the Capitol extension, a gentleman familiar with the value of property and the rates paid by the government, states that “ a fair rental for the year commencing June, 1862, and ending in June, 1863, would have been from $200 to $250 per month.” We are satisfied that this estimate is a reasonable one, and that the claimant should recover the balance if there is no legal reason to the contrary.
The hotel, as we find the facts to be, was taken by a United States quartermaster for a military hospital-, by the order of the military governor of the military district of Washington. Was this an ‘ ‘ appropriation ” by the army Avithin the meaning of the *393 Act 4th July, 1864, (13 Stat. L., p. 381,) which, provides that “the jurisdiction of the Court of Claims shall not'extend to or include any claim against the United States growing out of the destruction or appropriation of, or damage to property by the army or navy, or any part of the army or navy engaged in the suppression of the rebellion, from the commencement to the close thereof?”
There have been two cases in this court somewhat bearing on the case at bar. The first is that of Claris, (1 C. 01s. B., p. 145.) There the building was in like manner taken by the military governor of Washington, and this court held that the claimant might recover. But the opinion places the decision upon the ground that the building “was used by a bureau in one of the executive departments of the government, and was occupied exclusively by persons engaged in the civil service of the United States.” Here the building was not used by one of the “executive departments” nor occupied “by persons engaged in the civil service,” but was held as a military hospital.
The second case is that of Ayres, (3 C. Cls. B., p. 1.) There the building was taken by the quartermaster for the use of the pay department. No rent was ever paid and no lease was ever acknowledged; and the building was situated at Memphis and was occupied for two years during the war. A clerk of the quartermaster, who was sent to select a building, promised the owner that he should be paid a reasonable rent. But the court held that the clerk had not “ competent authority to bind the United States for the payment of the rent,'” and the occupation of the building was “ an appropriation of property by the army, and therefore excluded from our jurisdiction by the express terms of the act.”
The act of 1864 manifestly relates to two classes of claims. The first embraces those arising from the ravages of war. The terms “destruction of” and “ damage to” can have no other meaning. But the term “ appropriation of” has an entirely different signification. “ To appropriate is to talce from another to onés self with or without violence.” (Worcester.) It is a term which excludes the idea of purchase and relates to those acts of military power which exist and belong within the state of war, and which are. generally confined to an enemy’s country.
The statute implies this last restriction. Its second section provides for the payment of “claims of loyal citizens in States *394 not in rebellion, for quartermaster stores actually ftirnisbed to the army of the United States and receipted for by the proper officer receiving the same, or which may have been talcen by such officers without giving such receipt.” And it is made the duty of the Quartermaster General, “if convinced” that the claim “is just, and of the loyalty of the claimant, and that the stores have been actually received or talcen for the use of and used by said army,” to report it to the Third Auditor for settlement. The third section, in like manner and in the same terms, provides for the payment of claims “for subsistence actually furnished” to the army “ by loyal citizens in States not in rebellion.” Thus it would seem to be the intent of the law that property “taken for the use of and used” by the army in the loyal States should be deemed taken under an implied contract, while property taken and used in the enemy’s country is to be deemed property appropriated by th$ army.
It is not, however, necessary to go to that length in this case, for in addition to the fact of the building in question being within the District of Columbia, and taken by officers engaged rather as a police force for the national capital than "in the suppression of the rebellion,” within the meaning of the act, it has also been recognized by the War Department as held under an implied contract.
An executive department undoubtedly has the right to make or ratify an implied' contract not forbidden by law, and represents, and in an executive sense is, the government. When the War Department treated this property as held by contract and paid the owner for or on account of its use, the court cannot say that it was property “appropriated by the army,” but must treat it as the government treated it, as property held under an implied lease. The rent under such a lease, like the consideration in all implied contracts, is the fair value of the thing taken.
There is also a claim in the case for $200, arising from injuries done to the premises under the first iease; but this we must dismiss for want of proof. And there is also a third item for injuries to the claimant’s ranges, furnaces, and gas fixtures, and of it the architect, Mr. Clark, who had charge of the repairs made by the defendants at the end of the-second term, says: “ As to the kitchen and ranges, the articles supplied and left there were considered as equivalent for the ones found there *395 and tbe use of them.” The claimant has not accounted for these articles, and he must he deemed to have accepted them in satisfaction of the injuries complained of.
The judgment of the court is, that the claimant recover the sum of twelve hundred dollars, ($1,200'.)